Argued July 14, decided August 3, rehearing denied October 18, 1910.

## WILLIAMS v. MOUNT HOOD RY. & POWER CO.

[110 Pac. 490 ; 111 Pac. 17.]

Evidence—Parol Evidence—Varying Terms of Written Instrument.
1. Under Section 704, B. & C. Comp., providing that when the terms of an agreement have been reduced to writing, no evidence other than the contents of the writing as to the terms of the agreement is admissible, a

written contract may not be varied by a parol agreement entered into prior to the signing of the writing.

CONTRACTS—BUILDING CONTRACTS—ESTIMATES BY THIRD PERSON—CON-
    CLUSIVENESS.

2. A party to a contract may stipulate that the estimate of the work done and the amount due under the contract shall be made by a third person and shall be final, but such an estimate is not conclusive, in the absence of a provision in the contract to that effect.

CONTRACTS—BUILDING CONTRACTS—ESTIMATES BY THIRD PERSON—CON-
    CLUSIVENESS.

3. A contract for the clearing by a subcontractor of a railroad right of way, which provides that the work shall be done to the satisfaction of the chief engineer of the railroad company, and that for all work done in a satisfactory manner and accepted by the contractor, the latter will pay a specified amount, and which fails to make estimates of the amount of the work done conclusive, does not make the estimates of the engineer conclusive on the parties.

CONTRACTS—BUILDING CONTRACTS—ESTIMATE OF WORK DONE—CONCLU-
    SIVENESS.

4. Where an estimate of a third person of the work done and the amount due under a contract is by the contract made conclusive, it is on the condition that the estimate shall be made according to the contract; otherwise they are not conclusive.

CONTRACTS—ISSUES, PROOF, AND VARIANCE—MODIFICATION—WAIVER OF
    PERFORMANCE.

5. Evidence offered to prove a subsequent modification of a contract is incompetent, either to prove a modification not pleaded, or to show a waiver of performance not tendered by an issue, and insisted on by the adverse party during the trial as not in the case.

CONTRACTS—PERFORMANCE—WAIVER.

6. A party who accepts work done by his contractor thereby waives strict performance.

From Multnomah: WILLIAM N. GATENS, Judge.

This is an action by Fred A. Williams and S. S. Dill, doing business under the firm name and style of Dill Contract Company, against the Mount Hood Railway & Power Company, a corporation, and the Mason Construction Company, a corporation, for work performed by plaintiffs in clearing the right of way for the railroad of the defendant, Mount Hood Railway & Power Company. The defendant, Mason Construction Company, was employed by the railway company to perform work about its right of way, and plaintiffs entered into a contract with the

construction company, for the clearing of said right of way for the railway company. The action was dismissed as to the Mount Hood Railway & Power Company, and from a judgment rendered against the Mason Construction Company, it appeals.                      REVERSED.

For appellants there was a brief over the names of *Mr. Samuel B. Huston* and *Mr. Ben C. Dey,* with an oral argument by *Mr. Huston.*

For respondents there was a brief over the names of *Mr. William C. Bristol* and *Mr. Fenton E. Grigsby,* with an oral argument by *Mr. Bristol.*

MR. JUSTICE EAKIN delivered the opinion of the court.

This is an action upon a contract to recover compensation for work done by plaintiffs in clearing the right of way for the railroad of the defendant Mount Hood Railway & Power Company. The defendant Mason Construction Company, of which Archie W. Mason was president and manager, was employed by the railway company to perform labor on and about its right of way. On September 21, 1907, the Mason Construction Company entered into a contract with plaintiffs which is alleged in the complaint to be partly in writing and partly oral, the writing being as follows:

"This indenture, made this 9th day of September, A. D. 1907, between the Mason Construction Company, a corporation created and existing under the laws of the State of Oregon, party of the first part, and the Dill Contract Company, of Fairview, Multnomah County, State of Oregon, party of the second part.

"Witnesseth, that for and in consideration of the sums mentioned in this contract, the Dill Contract Company, party of the second part, agrees to clear the right of way on the line of the Mount Hood Railway & Power Company, as laid out and located and to the satisfaction of the chief engineer of aforesaid railway company as follows:

"The Dill Contract Company to clear so much of the

right of way as they can keep out of the way of the construction gangs of the Mason Construction Company, and for such clearing of the right of way, the Mason Construction Company agrees to pay for the same the following prices, to-wit: The sum of seventy dollars ($70.00) per acre for clearing such right of way; twenty cents (20c) each for railroad ties, such ties to be an average face of eight (8) inches, and to be the regulation length; four cents (4c) per lineal foot for piling; four cents (4c) per lineal foot for cedar poles; six cents (6c) each for cedar posts; three dollars ($3.00) per thousand for sound logs; one dollar and fifty cents ($1.50) per cord for wood.

"All sawlogs to be left on the right of way, piled at the sides; all wood to be corded, all poles and piling to be peeled, all ties to be hewed on two sides, and to have an average face of eight (8) inches; all piling, posts, poles, ties and wood to be piled at edge of right of way and on said right of way. And for all such work done in a satisfactory manner and accepted by the Mason Construction Company, the said Mason Construction Company agrees to pay the sums due at the prices hereinbefore mentioned. Such payments to be made once a month, on the estimated amount of work as shall be completed and accepted, the Mason Construction Company reserving and withholding ten (10) per cent of any such estimates, until the next estimate is accepted," etc.

The oral part of the contract is alleged to be as follows:

"That the said Archie W. Mason and these plaintiffs verbally agreed that the price for cedar posts named in said contract should be six cents instead of four cents; that the price of $3 per thousand should apply to all sound logs; that the phrase in the written part of said contract, 'all sawlogs to be left on the right of way piled at the sides,' should be and was modified and changed by and with the consent, knowledge, and acquiescence of Mount Hood Railway & Power Company, so that all sawlogs cut on said right of way by plaintiffs were not to be piled at the sides of said right of way, but to be left as they fell when cut."

Plaintiffs set out in the complaint the items of work done under the contract, and claim a balance due in the

sum of $3,936.26. It is admitted that the logs were not piled on the right of way. The defendants admit the contract as set out in the writing, but deny that there was any oral part thereof, or that plaintiffs performed any work according to the contract. They also admit that plaintiffs performed certain labor to the amount specified in the answer, upon which a balance is due them of $598.54. At the trial the defendant Mason Construction Company admitted that plaintiffs were entitled to a verdict of $1,276.76, and contends that plaintiffs are not entitled to· recover $3 per thousand for sound logs, or more than $1 per thousand, for the reason that the logs were not piled on the right of way as specified in the contract. The engineer of the railway company rendered to plaintiffs two estimates of the amount of work done under the contract, viz.: One for the month of October, and one for the month of November. Plaintiffs contend that such estimates are conclusive upon defendant as to the amount of work done, and that it was done in compliance with the contract.

1. There are two principal questions involved on this appeal: (1) Whether plaintiffs can be permitted to prove by parol that the defendant Mason Construction Company agreed that the logs need not be piled on the right of way; (2) whether the engineer's estimates of the work done are conclusive on the defendant. At the trial the cause was dismissed as to the railway company, and judgment was rendered against defendant Mason Construction Company for the amount sued for, from which it appeals.

It will be seen, from a comparison of the writing and the oral part of the agreement relied on by plaintiffs, that all the terms of the oral part are included in the writing, except ᵗhat it conflicts with the writing as to the provision that all sawlogs are to be piled on the right of way, and provides that the logs be left as they fell. This con-

tradicts, and is intended to vary, the terms of the writing, which is prohibited by Section 704, B. & C. Comp., viz.:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, as between the parties * *, no evidence of the terms of the agreement, other than the contents of the writing except" * * (and the exception does not apply in this case.)

If there are terms of the agreement not contained in the writing, then parol evidence may be given to establish the part thereof that is not embraced in the writing and not in conflict with it. *Contract Co.* v. *Bridge Co.*, 29 Or. 549 (46 Pac. 138.)

2. In this case the alleged oral part of the agreement does not contain terms omitted from the writing, but is intended as a modification of it. The case seems to have been tried, however, upon the theory that the oral part of the contract was a subsequent modification of the original, which is not within the issues tendered by the complaint. And the evidence does not tend to show even such a subsequent modification. All that took place between the parties, in regard to such alleged modification of the contract, was prior to the signing of the writing. The writing is dated September 9, 1907, but was not signed until about September 21, 1907. Plaintiff Dill, as a witness, testified upon that point that at the time Mason brought the writing to him, he told him it was not the way they had talked it over (referring to the piling of the logs on the right of way) ; and that Mason admitted that it was not the agreement, but was a mistake of the bookkeeper who drew it. On cross-examination he states that this conversation took place both before and at the time the contract was signed, which was the last time he talked with Mason about it. Plaintiff Williams testified that Mason gave him two copies of the contract to look over on September 20th, and he saw that they were different from the agreement,

as he had understood it from Dill. The next day he and Dill went to see Mason and called his attention to what he claimed was wrong in the writing, concerning the piling of the logs, and it was after this that the contract was signed by Dill. (These conversations are contradicted by Mason.) No subsequent modification is shown, and the evidence is not competent to contradict the writing. Whether the defendants accepted the work done, as constituting a compliance with the contract, is not involved on this appeal, as the case was not submitted to the jury upon that basis.

3. We think the court erred also in refusing to permit defendants' witnesses to testify as to the number of sound logs which were cut by plaintiffs, and in instructing the jury to the effect that the estimate by the railway company's engineer of the amount of work done by plaintiffs under the contract was conclusive upon the defendants. The contract provides that the work shall be done "to the satisfaction of the chief engineer of the railway company," but there is no provision that he is to make estimates of the amount of work done or to determine whether it is a compliance with the contract, nor that his findings on those matters shall be conclusive upon the parties. The contract provides that "for all such work done in a satisfactory manner and accepted by the Mason Construction Company, the said Mason Construction Company agrees to pay * *" And it is to reserve "ten (10) per cent of any such estimates, until the next estimate is accepted," thus making the estimates by whomsoever made, subject to acceptance by the Mason Construction Company, and therefore not final.

4. Parties to a contract may stipulate that the estimate of the work done, and the amount due under the contract shall be made by a third party, and shall be final and conclusive. There are a multitude of cases so holding. But

Sig. 9

an estimate of the work done or amount due is not conclusive, in the absence of a provision in the contract to that effect. In the case of *Abercrombie & Williams* v. *Vandiver,* 126 Ala. 513 (28 South. 491), the contract, being for railroad construction work, contains a clause similar to the one above quoted from the contract before us, viz.: "To do the things herein by them contracted, in a first class and workmanlike manner, and to the satisfaction of the chief engineer of the * * Company," etc., with additional provisions, not in the contract before us, as to acceptance of the work by the engineer and the final estimate by him, and payments to be made on monthly estimates. The court holds that the engineer cannot finally decide the compensation to be paid and that his estimates of work done are not conclusive, because not made so by the contract. And in *Central Trust Co.* v. *Louisville St. L. & T. Ry. Co.* (C. C.) 70 Fed. 282, the judge makes the same distinction, stating the general rule that, when the parties contract for the conclusiveness of the estimate of the engineer, both parties are bound by it—citing *Railroad Co.* v. *March,* 114 U. S. 549 (5 Sup. Ct. 1035: 29 L. Ed. 255), and *Kihlberg* v. *United States,* 97 U. S. 398 (24 L. Ed. 1106), and other cases cited by plaintiffs in this case, but holding that to make such estimates conclusive it must be so specified in the contract, and further says:

"I do not see that this is an agreement that this estimate of the engineer is to be conclusive. The court should not imply such an agreement, but should require clear and express language, because it is contracting away the right of the party to appeal to the courts of justice in case of a controversy."

To the same effect is *Drhew* v. *Altoona,* 121 Pa. 401, 420 (15 Atl. 636.)

In *Mercantile Co.* v. *Honsey,* 205 U. S. 298 (27 Sup. Ct. 535: 51 L. Ed. 811), the contract provided that the work on the building should be done in the best manner and

with materials of the best quality, subject to the acceptance or rejection of an architect, all to be done in strict accord with the plans and specifications. And it is there held that this does not make the acceptance by the architect final and conclusive, and will not bind the owner or relieve the contractor from the agreement, and that to make such a certificate of the architect conclusive requires plain language to that effect in the contract. And cites *Railroad Co.* v. *March,* 114 U. S. 549 (5 Sup. Ct. 1035: 29 L. Ed. 255), and other cases as of the latter class. There is an extended note to this case in 10 Am. & Eng. Ann. Cas. 576. To the same effect is *Railroad Co.* v. *Wilcox,* 48 Pa. 161, where it is said:

"In this contract, however, this stipulation for finality is wanting, and this makes a most material difference. It prov:des for monthly estimates, and in the end for a final estimate, by the engineer, without any declaration as to conclusiveness," and holds that such estimates are not conclusive.

To the same effect are *Rusling* v. *Union Pipe & Construction Co.,* 5 App. Div. 448 (39 N. Y. Supp. 216); *Glacius* v. *Black,* 50 N. Y. 145 (10 Am. Rep. 449); *Fellows* v. *Snyder,* 50 Kan. 705 (32 Pac. 639); *Britton* v. *Railway Co.,* 90 Mich. 165 (51 N. W. 276.) And even where the estimate of the engineer is by the contract made conclusive, it is upon the condition that it is made according to the terms of the contract. It is not in his power to change or waive its terms. *Drhew* v. *Altoona,* 121 Pa. 401, 420 (15 Atl. 636); *G., H. & S. A. Ry. Co.* v. *Henry & Dilley,* 65 Tex. 685; *McAvoy* v. *Long,* 13 Ill. 147; *Burke v. Mayor of the City of New York,* 7 App. Div. 128 (40 N. Y. Supp. 82); *County of Cook* v. *Harns,* 108 Ill. 151.

In the case before us the estimates evidently were not according to the contract, in that they included logs not piled on the right of way.

There are other errors discussed in the briefs, but arose

principally out of errors above decided and need not be specifically mentioned.

The judgment is reversed and the cause remanded.

REVERSED.

---

Decided October 18, 1910.

PETITION FOR REHEARING.

[111 Pac. 17.]

MR. JUSTICE EAKIN delivered the opinion of the court.

5. This motion is based largely upon plaintiff's contention that the evidence as to the manner in which the work was done, and the acquiescence or acceptance thereof by defendant, and the verdict of the jury thereon in plaintiff's favor, are conclusive of plaintiff's right to recover, and that the former opinion of this court encroached upon the province of the jury.

The Mt. Hood Railway & Power Company, the owner of the railroad which was under process of construction, was a party defendant in this action. E. P. Clark was the president and C. W. Miller the general manager of the defendant railway company. For the purpose of showing the relations between the railway company and the defendant the Mason Construction Company, the complaint alleges that "said Mt. Hood Railway & Power Company employed and engaged the Mason Construction Company to perform work and labor on and about the right of way of said railway," and this is expressly admitted by the answer. The language is very indefinite as to the relations existing between them, but may be broad enough to include a superintendent or agent of construction, with authority to let contracts; and from what is disclosed in the bill of exceptions there was evidence tending to show that the construction company was a go-between in the railway company's dealings with those doing the work, at

least in clearing the right of way, and if the railway company had a voice in determining what would constitute a compliance with the contract with plaintiff, as the bill of exceptions tends to show, then the directions and other acts of its president and its manager to plaintiffs in relation thereto would bind the construction company. And as disclosed by the bill of exceptions there was evidence tending to show a waiver of a strict performance of the written contract, both as to unsound logs and as to piling the logs on the right of way, and those questions would all be for the consideration of the jury, if they were within the issues. But no such issue is tendered, and the evidence was not offered for that purpose, but to prove a subsequent modification of the contract, which is not alleged; and therefore it was incompetent for either. This objection was made by defendant from the commencement of the trial, and insisted on throughout. Therefore we cannot treat it as though it were an issue.

6. The situation is the same as to the estimates. In so far as the work was accepted by defendant, it would be a waiver of strict performance; but the court refused to permit any evidence by defendant upon the amount of work done, or its character, or as to whether it was accepted, stating to the jury that there was no question as to the amount of the work done; defendant being concluded by the estimates. And this ruling not only affected the amount of logs, their quality, and whether piled as required, but each of the other items of the work, upon which defendant tendered proof of the amount performed. This took from the jury the right to consider whether there was an acceptance of the work by defendant, and made the estimates final upon that question, and was prejudicial error.

Therefore the motion is denied.

REVERSED: REHEARING DENIED.