FRISCO LUMBER CO. v. HODGE et al.

(Circuit Court of Appeals, Eighth Circuit. November 30, 1914.)

No. 4154.

1. LOGS AND LOGGING (§ 3*)—SALES OF STANDING TIMBER—ESTIMATE OF QUANTITY.

Under a contract for the sale of standing timber at $2.50 per 1,000 feet, which provided that the quantity should be estimated by two competent estimators, one to be chosen by each party, and that their estimate should be the basis for settlement of the purchase price, provided that if they could not agree they should select a third estimator, who should be umpire, and that the estimate or decision of a majority should be binding, where the estimators agreed without selecting an umpire, their decision was binding and was not merely a basis for further negotiations.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

2. CONTRACTS (§ 284*)—DELEGATION OF QUESTION TO ARBITRATORS—CONCLUSIVENESS OF DECISION.

When the parties to a contract delegate to a third person the ascertainment or decision of some undetermined matter, such as due performance or quantity, quality, or the like, and stipulate that his decision shall be final or binding, his decision, when made, is conclusive in the absence of fraud or such gross mistake as implies bad faith or a failure to exercise an honest judgment.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1292–1302, 1308–1310, 1312–1316, 1326–1338, 1340–1342, 1344–1346, 1350, 1351; Dec. Dig. § 284.*]

3. LOGS AND LOGGING (§ 3*) — SALES OF STANDING TIMBER — ESTIMATE OF QUANTITY.

While, under a contract for the sale of standing timber providing that the quantity should be estimated by estimators selected by the parties, the authority of the estimators was confined to the subject-matter specified in the contract, and if some element outside of the contract entered into the estimate and was not distinguishable or separable the estimate would not be the one contemplated by the parties and would not be binding, where they estimated separately the timber on each 40-acre tract and their estimate as to the timber on land not included in the contract was easily distinguishable, the inclusion of such timber did not affect the binding force of the estimate as to the timber included in the contract.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

4. LOGS AND LOGGING (§ 3*) — SALES OF STANDING TIMBER — ESTIMATE OF QUANTITY.

Where a purchaser of standing timber, under a contract providing for an estimate of the quantity by estimators selected by the parties, made no complaint or criticism when the estimators completed their work and turned in their report, because of the failure to report on some land covered by the contract, it could not afterwards complain thereof, especially

as the amount was small and it thereby got the timber without paying the specified price.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

5. LOGS AND LOGGING (§ 3*)—SALES OF STANDING TIMBER—MODIFICATION BY SUBSEQUENT AGREEMENT.

An estimate of the quantity of standing timber covered by a contract of sale providing that it should be estimated by estimators chosen by the parties was not abandoned and settlement made upon another basis by a subsequent contract for a partial settlement, made and carried out, which expressly provided that, in the event the quantity had already been estimated or decided in compliance with the original contract, nothing therein contained was to be construed as waiving it.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit by the Frisco Lumber Company against O. E. Hodge and another, partners doing business as Hodge & Hunt. From a decree for defendants, plaintiff appeals. Affirmed.

William T. Hutchings, of Muskogee, Okl., for appellant.

Joseph G. Ralls, of Atoka, Okl., and Joseph D. Barksdale, of Ruston, La. (A. A. Barksdale, of Ruston, La., on the brief), for appellees.

Before HOOK and CARLAND, Circuit Judges, and REED, District Judge.

HOOK, Circuit Judge. Hodge & Hunt sold the Frisco Lumber Company their sawmill plant, lumber, unsawed logs, and the standing pine timber on about 10 sections of land in Oklahoma. The present controversy relates to the timber only, and for reasons not now material it was presented to the trial court in a suit in equity brought by the lumber company. The special master to whom the cause was referred reported findings of fact and conclusions of law in favor of Hodge & Hunt; the trial court sustained them and rendered a decree accordingly. The lumber company appealed.

[1] Briefly stated, the controversy is whether the parties are concluded by the estimate of the quantity of the standing timber made by two estimators chosen according to the terms of the contract of sale. There is no dispute about the price; the contract fixed it at $2.50 per 1,000 feet of contents. Hodge & Hunt contend the estimate is conclusive and the trial court so held. The lumber company gives four reasons for the contrary: First, it says, the language of the contract does not sustain the conclusion that prevailed. The contract provided as follows:

"The quantity of said pine timber shall be estimated by two competent estimators; all merchantable timber to be estimated down to eight inches or over in diameter at the top end, one of said estimators to be chosen by each party to this contract, and their estimate shall be the basis for settlement of such purchase price hereinunder as aforesaid. Provided, that if the said estimators cannot agree, then they shall select a third estimator, who shall be umpire, and the estimation or decision of a majority shall be binding on the parties hereto."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On this it is argued that the estimate of quantity was to be merely the "basis for settlement." But even so, it might nevertheless have been intended as conclusive to that extent. The quantity was the only undetermined factor in the transaction, and when it was found there remained but a simple mathematical calculation. The other factor was the price per unit, and it was definitely fixed by the parties themselves. It can hardly be said that by the phrase "basis for settlement" they intended to establish a mere point for argument or further negotiations, especially since by other parts of the contract Hodge & Hunt sold the lumber company their sawmill plant and other property. But the paragraph of the contract above quoted, taken in its entirety, as it should be, clearly shows the estimate made was intended to be binding. If the two estimators could not agree, they were to select a third, and, the contract says, "the estimation or decision of a majority shall be binding on the parties hereto." The two estimators chosen by the parties having agreed, there was no necessity for a third. We can conceive of no reason for making the binding force of the estimate depend upon the contingency of a disagreement and the selection of an umpire. The sense of the provision as a whole is otherwise, and it prevails over the mere placement of the words. It fulfills the requirement that the intention be plain and not rest in implication. Mercantile Trust Co. v. Hensey, 205 U. S. 298, 27 Sup. Ct. 535, 51 L. Ed. 811, 10 Ann. Cas. 572; United States v. Hurley, 105 C. C. A. 208, 182 Fed. 776.

[2] When the parties to a contract delegate to a third person the ascertainment or decision of some undetermined matter such as due performance or quantity, quality, or the like, and stipulate that his decision shall be final or binding, his decision when made is conclusive in the absence of fraud or such gross mistake as implies bad faith or a failure to exercise an honest judgment. This is the settled rule in the courts of the United States. Kihlberg v. United States, 97 U. S. 398, 24 L. Ed. 1106; Martinsburg & Potomac R. Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255; Elliott v. Railway Co., 21 C. C. A. 3, 74 Fed. 707; Guild v. Andrews, 70 C. C. A. 49, 137 Fed. 369; Roberts, Johnson & Rand Shoe Co. v. Westinghouse, etc., Co., 74 C. C. A. 348, 143 Fed. 218. The lumber company charged in its pleading that the estimators were guilty of fraud, or rather that the one chosen by Hodge & Hunt was, and that he imposed upon the ignorance of the other, and the estimate of the standing timber was grossly and fraudulently excessive. There was no proof of fraud in the conduct of the estimators. On the contrary, it was found from abundant evidence that both were capable men of long experience in the work and that they performed their duties with especial care and fidelity. The estimate returned of the contents of the standing timber was 37,810,000 feet. The lumber company offered evidence to show that after the timber was cut the log scales made by it and its mill scales showed a discrepancy of about 11,000,000 feet. This, it claims, disclosed such a gross mistake as to impeach the estimate. Estimates of the board measure contents of standing timber are at the best approximations based on the judgment of experience; accuracy is impossible and is not expected. We know that great tracts of pine timber have been

bought and sold on that basis. It was a custom in the business, and presumably prices were fixed accordingly. Still the discrepancy claimed is out of proportion to the estimate. Hodge & Hunt therefore attacked the figures of the lumber company. The special master and the trial court held that they were made by the lumber company ex parte in view of a threatened lawsuit, and that their accuracy, completeness, and reliability were not shown. They found from voluminous testimony that merchantable timber was left in high cut stumps and in contract dimensions in the tree tops, some whole trees were felled and the logs sawed but left on the ground, some trees were left standing, much merchantable timber was destroyed by fire, some was made into ties and bridge timber, and logs were hauled to another mill and sawed by third parties. Upon a consideration of the evidence on these matters, and giving due consideration to the findings of the master and the approval by the trial court, we do not think the integrity of the estimate was successfully impeached.

[3, 4] The lumber company further urges that the estimate included the timber on 560 acres of land not in the contract. The authority of the estimators was that conferred by the contract, and its proper exercise was confined to the subject-matter specified. If some element outside of the contract entered into the estimate and is not distinguishable, or separable, the estimate would not be the one contemplated by the parties and would not be binding. It appears, however, that the estimators used plats of the land showing each 40-acre tract, and as their work progressed they entered in the platted square of each minor subdivision its timber contents and so reported them to the contracting parties. One of the plats as finally made up was in evidence. The timber lands not in the contract are easily distinguishable. Moreover, the timber on them was not embraced in the recovery. It is therefore unnecessary to consider whether the estimates upon the outside lands are to be rejected because the titles were found defective, a contingency contemplated and provided for in the contract, or were made at the instance and for the private benefit of one of the parties. They were without influence upon the question at issue. It is also said the estimators failed to report on some land covered by the contract. This is evidently an afterthought, as no complaint or criticism was made when the estimators completed their work and turned in their report. Again, the amount was small, the lumber company got the timber, and Hodge & Hunt did not get the price.

[5] Finally, it is claimed that by a subsequent contract the parties agreed to abandon the estimate and to settle upon another basis. There is no merit in this. It was apparent that, whether the estimate was conclusive or not, a large sum of money was due Hodge & Hunt, so a contract for partial settlement was made and carried out. It recited the contentions with respect to the estimate and expressly reserved them from prejudice. One of the several provisions to that effect is as follows:

"And it is understood that in the event the quantity of said timber had already been estimated or decided upon in compliance with said original contract that nothing herein contained is to be construed as waiving same."

The decree is affirmed.